UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK WEBB,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS, et al.,<br><br>　　　　Defendants. | Case No.: 1:13-cv-01254-BAM (PC)<br><br>ORDER DISMISSING COMPLAINT WITH<br>LEAVE TO AMEND<br>(ECF No. 1)<br><br>THIRTY-DAY DEADLINE |

**I.　　Screening Requirement and Standard**

Plaintiff Jack Webb ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's complaint, filed on August 12, 2013, is currently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at Sierra Conservation Center ("SCC"), where the events in the complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Jeffrey Beard, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); (2) Margo Wilkerson, Community Resource Manager, SCC; (3) Heidi Lackner, SCC Warden; (4) Chaplain Littlejohns; (5) M. Baldwin, Appeals Coordinator; (6) Kathleen Dickinson, Director of Adult Institutions; (7) Doe #1, SCC Mailroom Supervisor; (8) Doe #2 Religious Review Committee; (9) Frank Chavez; and (10) CDCR. Defendants are sued in their individual and official capacities.

Plaintiff's complaint concerns allegations that Defendants have hindered his practice of his Asatru/Odinic faith. Specifically, Plaintiff alleges that a Chaplain did not show up to allow Plaintiff to practice his religion on December 9, 2008.

1    On December 29, 2008, Chaplain Littlejohns received a 602 grievance for delivery, but refused
2  to accept or sign any documents.  Chaplain Littlejohns instructed the practitioners to address the issues
3  to Defendant Wilkerson.

4    On January 6, 2009, members of the Asatru/Odinic faith met with Defendant Wilkerson
5  regarding issues of chapel times, calendar dates, recognition as a religious group, outdoor land and the
6  failure to ducat practitioners for meetings and special events.  Plaintiff alleges that Defendant
7  Wilkerson either denied the requests or failed to act on the requests.

8    On February 9, 2009, the request for an outdoor worship area was denied due to safety and
9  security of the institution.

10    On March 9, 2009, a book order was resubmitted.  The books were ordered twice by
11  Defendant Littlejohns because of the "discriminatory practices of Defendants to non-traditional faiths .
12  . . . (ECF No. 1, p. 13.)  Plaintiff alleges that other faiths do no experience such routine
13  inconveniences.

14    On March 9, 2009, Lt. Knoig heard a citizen's complaint against Defendant Wilkinson.  Lt.
15  Knoig would not allow an inmate minister for the Asatru/Odinic practitioners in violation of California
16  regulations.  Plaintiff argues that this was discrimination against him because other similarly situated
17  persons are allowed inmate ministers.

18    On April 11, 2009, Defendant Wilkerson, Captain Gibbs and Chaplain Littlejohns interviewed
19  Inmate Stien in connection with a 602 request for outdoor land use for religious purposes.  The 602
20  was partially granted, but no action was taken to conform the requested land use.

21    On May 11, 2009, a book order arrived.  The order was sent to the lower yard and inmates on
22  C-Facility  (Tuolumne yard) received used books from the lower yard.  Plaintiff alleges that this is the
23  type of discrimination done by Chaplain Littlejohns, Defendant Wilkerson and other staff.

24    On May 11, 2009, Defendant Baldwin screened out a 602 appeal because too much time had
25  elapsed.  Plaintiff contends that time limits are not mandatory and this denial was another event to
26  deprive the Asatru/Odinic practitioners their right to freely practice their faith.

27    On June 1, 2009, Chaplain Littlejohns stated that there would not be a meeting on June 9,
28  2009, or a banquet on June 21, 2009, because there was no sponsor.   Plaintiff alleges that custody

1 could have been assigned to oversee the banquet and that Asatru/Odinic practitioners do not require a
2 church sanctioned person to oversee their functions.

3 On October 10, 2009, practitioners had a discussion with Chaplain Littlejohns regarding the
4 use of a lighter to burn sage and other incense. Chaplain Littlejohns denied the request.

5 On November 2, 2009, an inmate filed a 602 grievance against the appeals coordinator for not
6 properly processing grievances concerning the Asatru/Odinic faith.

7 On March 15, 2010, Plaintiff alleges that another inmate was placed in administrative lock-up
8 in retaliation for filing grievances related to establishment of an Asatru/Odinic religious program at
9 SCC.

10 On March 20, 2010, Chaplain Littlejohns escorted members of the Asatru/Odinic faith to the
11 facility visiting room for an indoor Blot (congregational ceremony). Plaintiff alleges that denial of an
12 outdoor ceremony, which is an essential part of Asatru/Odinic practice, caused a deprivation of his
13 rights.

14 On April 3, 2010, ducats were issued to Asatru/Odinic practitioners, but SCC staff refused to
15 honor them.

16 On April 5, 2010, Chaplain Littlejohns warned Asatru/Odinic members that if they continued
17 to curse during services, then he would no longer be their sponsor. Plaintiff complained that this
18 denied him freedom of expression and caused an unreasonable burden on his freedom of speech.

19 On April 17, 2010, CDCR issued a "Notice of Change to Regulations." The change required
20 custody and staff to all practitioners excused time off. However, SCC did not allow excused time off
21 without a threat of retaliation, such as losing a job or being passed over for promotions. Plaintiff
22 alleges that this forced practitioners to choose between a job and the practice of faith.

23 On April 18, 2010, Defendant Lackner, while at Mule Creek State Prison, received a request
24 for a job position to be created. Defendant Lackner had knowledge regarding the needs of non-
25 traditional faiths from her previous employment, but Plaintiff alleges that he was denied the
26 opportunity to practice his faith by those under Defendant Lackner's supervision.

27 On April 19, 2010, Asatru/Odinic members requested supplies from Chaplain Littlejohns, but
28 no supplies were issued.

1    In June 2010, SCC issued a supplement to its Operations Manual.  However, Plaintiff alleges
2  that the supplement excluded a great deal of Asatru/Odinic practitioners' needs and did not allow for
3  an outdoor area.  Plaintiff alleges that Warden Chavez failed to research sacred artifacts.
4    On December, 20, 2010, Chaplain Littlejohns issued a memorandum regarding oils from Azure
5  Green supply company.  According to Plaintiff, the memorandum was ambiguous and any order of
6  sacred oils and herbs would likely be denied.
7    On November 22, 2010, Defendant Wilkerson received a proposal regarding guidelines for
8  ordering spiritual packages from the Men's Advisory Committee.  The proposal was denied, along
9  with special orders for religious purchases.
10    On June 6, 2011, Defendant Baldwin refused to process a grievance concerning Asatru/Odinic
11  religious rights, including the use of a sacred outdoor religious area.  Defendant Baldwin screened out
12  the appeal and refused to allow exhibits explaining the necessity of the outdoor area.
13    On July 20, 2011, Defendant Wilkerson responded to a grievance regarding denial of an
14  outdoor area for Asatru/Odinic practitioners.  Defendant Wilkerson indicated that there was an outdoor
15  area on C facility to accommodate various groups that require outdoor religious activities.  Defendant
16  Wilkerson also denied a request for a fire pit due to safety and security concerns.  Defendant
17  Wilkerson also indicated that Asatru/Odinic practitioners were not being denied state and federal
18  funds to purchase religious items.  On September 15, 2011, Defendant Lackner responded to the
19  grievance at the Second Level and found that first level appeal was conducted properly.
20    On October 25, 2012, Defendant Dickinson issued a memorandum to Community Resource
21  Managers regarding religious personal property and religious grounds.  The memorandum reportedly
22  prohibited the establishment of new outdoor worship areas.
23    On January 31, 2013, Defendant Doe #1, a mailroom supervisor, refused to process legal mail
24  addressed to Defendant Wilkerson.
25    On February 11, 2013, Defendant Baldwin refused to process a grievance concerning the
26  mailroom's processing of mail addressed to Defendant Wilkerson and Deacon Lewis.
27    On March 4, 2013, Defendant Wilkerson refused to process a request for religious items that
28  were allowed Asatru/Odinic practitioners and Plaintiff.  Defendant Wilkerson indicated that the

1  requested items were not allowed at SCC.  However, Plaintiff claims that these items were allowed
2  and were contained on a property matrix provided by Defendant Wilkerson.
3  　　　　On February 5, 2013, Defendant Baldwin refused to process a grievance directed to Defendant
4  Wilkerson.
5  　　　　On January 18, 2013, Prison Guard Miller took Plaintiff's hammer, which was used in
6  ceremony.  Defendant Miller wrote a receipt for the confiscated property, but refused to return the
7  hammer.
8  　　　　On June 22, 2013, while holding a Blot on the Tuolumne yard, Prison Guard Hanson referred
9  to Plaintiff's faith as a "bunch of non-sense."  Hanson indicated that he was going to put an end to
10 Blots on the yard.
11 　　　　Prior to January 19, 2013, Plaintiff applied for supplies and requested a book order.  Chaplain
12 Littlejohns failed to identify the ordered books and ignored the request for supplies.  On January 25,
13 2013, Defendant Wilkerson indicated that the order was submitted, but final approval had not been
14 authorized.  Defendant Wilkerson suggested that practitioners contact Chaplain Littlejohns for a copy
15 of the order.  When approached, Chaplain Littlejohns suggested patience.  Plaintiff alleges that the
16 request for office supplies again was ignored.
17 　　　　Plaintiff further alleges that Defendant Doe #1, the mailroom supervisor, refused to process the
18 civil complaint in this action.
19 　　　　Plaintiff asserts the following causes of action:  (1) violation of the Establishment Clause
20 against all defendants in their official and individual capacities; (2) violation of the Equal Protection
21 Clause of the Fourteenth Amendment against all defendants in their official and individual capacities;
22 (3) violation of the Free Exercise Clause of the First Amendment; (4) violation of the Religious Land
23 Use and Institutional Persons Act ("RLUIPA") against CDCR and all defendants in their individual
24 and official capacities; and (5) violation of the California Constitution against CDCR and all
25 defendants in their individual and official capacities.
26 　　　　Plaintiff seeks declaratory and injunctive relief, along with damages.
27 ///
28 ///

**III. Discussion**

  **1. Linkage Requirement**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611; Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

  Here, Plaintiff fails to link Defendant Jeffrey Beard and Doe #2 to any constitutional violation. If Plaintiff amends his complaint, he must allege what each individual did or failed to do that resulted in a violation of Plaintiff's constitutional rights.

  To the extent Plaintiff seeks to bring suit against Defendant Beard and Defendant Lackner based on their roles as supervisors, he may not do so. Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074–75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074–75; Lacey, 693 F.3d at 915–16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive

1  act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of
2  constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977
3  (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

### 2. Official Capacity and Eleventh Amendment

The Eleventh Amendment prohibits suits for monetary damages against a State, its agencies, and state officials acting in their official capacities. Aholelei v. Dep't of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). Plaintiff may not bring suit against the CDCR. Plaintiff also may not bring a suit for monetary damages against defendants in their official capacities.

### 3. Establishment Clause of the First Amendment

The Establishment Clause of the First Amendment "prohibits the enactment of a law or official policy that 'establishes a religion or religious faith, or tends to do so.'" Newdow v. Lefevre, 598 F.3d 638, 643 (9th Cir. 2010) (quoting Lynch v. Donnelly, 465 U.S. 668, 678, 104 S.Ct. 1355 (1984)). The clause applies to official condonement of a particular religion or religious belief, and to official disapproval or hostility towards religion. American Family Ass'n, Inc. v. City and County of San Francisco, 277 F.3d 1114, 1120-21 (9th Cir. 2002) (quotation marks and citations omitted).

Plaintiff alleges that Defendants' denial of religious items and denial of funds to support the Asatru/Odinic religion violate the Establishment Clause by favoring mainstream religions. However, Plaintiff's allegations do not demonstrate that the defendants are endorsing any other religion over his Asatru/Odinic faith. Plaintiff's allegations related to mainstream religions are, at best, generalized and conclusory.

Further, Plaintiff's allegations that certain items necessary to practice his faith have not been allowed or have been denied does not demonstrate that defendants are endorsing any other particular religion or belief. Restrictions are inherent in the prison setting. "[A] prisoner retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Ashker v. California Dep't Of Corr., 350 F.3d 917, 922 (9th Cir. 2003) (internal citations and quotations omitted). Plaintiff's belief that he is entitled to certain items that have been restricted does not suggest that Defendants are supporting any other particular religion or belief.

1  The Court therefore finds that Plaintiff has failed to state a claim under the Establishment
2  Clause.

### 4. Equal Protection Clause of the Fourteenth Amendment

The Equal Protection Clause requires that all persons who are similarly situated should be treated alike. Lee v. City of Los Angeles, 250 F.3d 668, 686 (2001); City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "The Equal Protection Clause entitles each prisoner to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008) (quoting Cruz v. Beto, 405 U.S. 319, 321-22 (1972) (per curiam)).

To state a claim, Plaintiff must allege facts sufficient to support a claim that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. Cruz, 405 U.S. at 321-22; Shakur, 514 F.3d at 891; Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee, 250 F.3d at 686.

Here, Plaintiff alleges that other religions have not been denied the same opportunities and materials as Plaintiff and those of his Asatru/Odinic faith. However, Plaintiff's assertions regarding other mainstream religions are conclusory at best and lack supporting factual allegations. Plaintiff also has failed to allege sufficient facts to demonstrate that he was denied the same opportunities because of his religious beliefs. Plaintiff therefore has failed to state an Equal Protection Clause claim.

### 5. Free Exercise Clause of the First Amendment

"Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur, 514 F.3d at 884-85.

9

Plaintiff appears to allege that his rights were violated by the denial of access to chapel times, an outdoor worship space and various items, including a lighter, a hammer, office supplies and a fire pit.

*Chapel Access*

With regard to chapel access, Plaintiff's allegations do not demonstrate a continuing denial of access. At best, Plaintiff alleges that a Chaplain did not show up on December 9, 2008, and there was no sponsor available for a meeting and a banquet in June 2009. There is no indication that the inability to attend chapel/services on these three dates substantially burdened Plaintiff's ability to practice his religion. Further, Plaintiff's allegations that Defendant Littlejohns warned them to stop cursing during services or the requirement of a sponsor are not sufficient to demonstrate a substantial burden on his ability to practice his faith.

*Outdoor Worship Space*

Plaintiff alleges that denial of a sacred outdoor space caused a deprivation of his rights. However, Plaintiff's own allegations establish that Defendants provided an outdoor area on C facility to accommodate groups that required outdoor religious activities. Plaintiff has not demonstrated how this is insufficient for the practice of his faith.

*Religious Items*

With regard to religious items, Plaintiff first complains about book orders. However, it is evident from Plaintiff's allegations that Defendant Littlejohns submitted the requested book orders. Plaintiff's additional complaints about used books are not sufficient to state a Free Exercise claim. Additionally, Plaintiff's complaints about the denial office supplies or interference with mail do not state a Free Exercise claim.

Plaintiff also complains about denial of a hammer, outdoor fire pit and a lighter. However, these items are a threat to the safety and security of the institution. As noted above, a prisoner retains only those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Ashker, 350 F.3d at 922.

Plaintiff also complains about an anticipated denial of orders of sacred oils and herbs. However, Plaintiff has not alleged any actual denial of these items and that such denial prevented him from engaging in conduct that he sincerely believes is consistent with his faith.

### 6. Religious Land Use and Institutional Persons Act ("RLUIPA")

A claim under RLUIPA may proceed only for injunctive relief against defendants acting within their official capacities. Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014) (RLUIPA does not contemplate liability of government employees in individual capacity); Alvarez v. Hill, 667 F.3d 1061, 1063 (9th Cir. 2012) (money damages not available for RLUIPA claim against defendants sued in their official capacity); Graddy v. Ding, 2014 WL 6634580, *3 (E.D. Cal. Nov. 21, 2014).

To state a claim for violation of RLUIPA, Plaintiff must allege facts plausibly showing that the challenged policy and the practices it engenders impose a substantial burden on the exercise of his religious beliefs; Plaintiff bears the initial burden of persuasion on this issue. Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1124-25 (9th Cir. 2013) (quotation marks omitted).

"Courts are expected to apply RLUIPA's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Id. (citing Cutter v. Wilkinson, 544 U.S. 709, 723, 125 S.Ct. 2325 (2003)) (internal quotation marks omitted).

As discussed above, Plaintiff has failed to demonstrate that any of the issues complained of have imposed a substantial burden on the practice of his faith, particularly when giving deference to prison procedures for maintaining order, security and discipline. Plaintiff therefore fails to state a claim under RLUIPA.

### 7. State Law

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian*

1  *Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). "The district court[] may decline to exercise
2  supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all
3  claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has
4  cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed
5  as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

6        Here, Plaintiff contends that Defendants violated Article 1, Section 4 of the California
7  Constitution, which provides for the free exercise and enjoyment of religion without discrimination
8  and prohibits the establishment of religion.  Analysis of a free exercise claim under the California
9  Constitution is the same as that under the Free Exercise Clause of the First Amendment.  Vernon v.
10 City of Los Angeles, 27 F.3d 1385, 1392 (9th Cir. 1994).  Similarly, analysis of an establishment of
11 religion claim under the California Constitution is the same as that under the Establishment Clause of
12 the First Amendment. McCollum v. State of California, 2006 WL 2263912, *7 (N.D. Cal. 2006).  For
13 the same reasons that Plaintiff has failed to state Establishment Clause or Free Exercise Clause claims,
14 Plaintiff fails to state a claim under the California Constitution.

15       Plaintiff may amend this claim.  However, if Plaintiff fails to allege a cognizable federal claim
16 in his amended complaint, then the Court will not exercise supplemental jurisdiction over his state law
17 claim, even if he cures the deficiency and states a claim based on the California Constitution. 28
18 U.S.C. § 1367(a); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001).

19       **7.    Grievance Process**

20       Plaintiff cannot pursue any claims against staff relating to their involvement in the
21 administrative review of his inmate appeals. The existence of an inmate appeals process does not
22 create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular
23 result or that the appeals process was deficient. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003);
24 Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  To state a claim under section 1983, Plaintiff
25 must demonstrate personal involvement in the underlying violation of his rights, Iqbal, 556 U.S. at
26 677; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002), and liability may not be based merely on
27 Plaintiff's dissatisfaction with the administrative process or a decision on an appeal, Ramirez, 334
28 F.3d at 860; Mann, 855 F.2d at 640.

**IV.     Conclusion and Order**

Plaintiff's complaint fails to state a cognizable section 1983 claim.  The Court will grant Plaintiff an opportunity to amend his complaint and cure the identified deficiencies to the extent that he is able to do so in good faith.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint.  Lacey, 693 F.3d at 927.  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's complaint is dismissed with leave to amend;
3. Within thirty (30) days from the date of service of this order, Plaintiff shall file a first amended complaint; and
4. <u>If Plaintiff fails to file a first amended complaint in compliance with this order, this action will be dismissed for failure to obey a court order</u>.

IT IS SO ORDERED.

Dated:  **December 22, 2014**          /s/ *Barbara A. McAuliffe*
                                                                   UNITED STATES MAGISTRATE JUDGE